UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KOFI EASTERLING,

        Plaintiff,

  v.                                    Case No. 08-CV-1068

SPENCER SIARNICKI, BEVERLY DILLON,
BUD WALDRON, DEBRA FRITZ, and JOHN HUSZ,

        Defendants.

---

# ORDER

In this action, brought under 42 U.S.C. § 1983, the plaintiff is proceeding *pro se* on claims under the Eighth and Fourteenth Amendment. This matter is before the court on the defendants' motion for summary judgment. The plaintiff subsequently filed a document entitled Motion to Refute Defendants Motion for Summary Judgment that was docketed as a brief in opposition. Because the plaintiff's pleading does not ask for any relief, the court will construe it as the plaintiff's brief in opposition to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

When the moving party does not bear the burden of proof at trial, he can prevail on a motion for summary judgment by showing that there is an absence of evidence to support any essential element of the non-moving party's case. *Celotex*

*Corp.*, 477 U.S. at 322-23. However, where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

## FACTUAL BACKGROUND[1]

The plaintiff, Kofi Easterling, is a state prisoner in the custody of the Wisconsin Department of Corrections. All of the defendants are employees of the State of Wisconsin Department of Corrections (DOC). Defendant Spencer Siarnicki is a Probation and Parole Agent and has been the plaintiff's supervising agent since October 5, 2001. Defendant Beverly Dillon is a Corrections Field Supervisor and is Siarnicki's supervisor. Defendant Edward Waldron is a Social Worker Senior who was the plaintiff's social worker at the Green Bay Correctional Institution (GBCI) from August 3, 2008, through October 14, 2008. Defendant Debra Fritz is also a Probation and Parole Agent, but she was never the plaintiff's supervising agent and did not participate in any way regarding the plaintiff's rules and conditions of

---

[1] The defendants provided the plaintiff with the notice required by the Civil Local Rules (E.D. Wis.) in *pro se* litigation. Nevertheless, none of the documents the plaintiff filed in response the defendants' motion for summary judgment were sworn. The plaintiff filed a brief in response to the defendants' motion and a document entitled "Motion disputing defendants finding of fact proposed" that did not respond individually to the defendants' proposed findings of fact. The plaintiff did not submit an affidavit or his own findings of fact. Accordingly, the facts are taken from the Defendants' Proposed Findings of Fact, to the extent they are supported by admissible evidence, and the plaintiff's sworn complaint. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996) (The court can construe a sworn complaint as an affidavit at the summary judgment stage.).

supervision or the decision to place him in custody. Defendant John Husz is the Warden of the Milwaukee Secure Detention Facility (MSDF). Husz did not participate in the decision to place and retain the plaintiff at MSDF, and he was not aware of when or why the plaintiff was placed in custody at MSDF until he was named as a defendant in this case.

Easterling was scheduled for mandatory release from state custody on October 14, 2008. He was designated for "high risk supervision" due largely to his assaultive criminal history and poor performance on supervision. In addition to many other applicable rules, offenders on "high risk supervision" are automatically required to participate in the Electronic Monitoring Program (EMP). In addition, the plaintiff was to live in a Transitional Living Placement (TLP) after his release from prison because he did not have an appropriate, verifiable residence at the time. Leading up to his mandatory release date, the plaintiff indicated that he would not comply with the terms and conditions of his supervision.

On or about July 5, 2008, defendant Siarnicki received a letter from the plaintiff stating that he wanted to revoke his own supervision and serve out his entire prison sentence.

On September 3, 2008, plaintiff sent a letter to Siarnicki, his parole agent, expressing his displeasure with Siarnicki and asking to be assigned to a different parole agent. The plaintiff included a "Statement of Information," in which he formally objected to being placed in a TLP, Community Residential Confinement

(CRC), the Intensive Sanction Program, the EMP, or any type of community-based treatment program after his mandatory release date. The document goes on to assert that all of those programming options for placement after mandatory release are contrary to the plaintiff's rights because they restrict him in a way that is inconsistent with release.

Upon receipt of the plaintiff's letter, Siarnicki scheduled a telephone conference with the plaintiff for September 11, 2008, to discuss the plaintiff's letter and his objections to the programming. When Siarnicki called on that date, the plaintiff refused to talk to him.

On approximately September 16, 2008, Siarnicki sent a copy of the plaintiff's rules of supervision to defendant Edward Waldron at GBCI to be served on the plaintiff. The defendants' proposed findings of fact refer to e-mail messages sent between defendants Siarnicki and Waldron. However, because copies of the e-mail messages are not attached to the affidavits of Siarnicki or Waldron, the information contained in the documents is not admissible. *See* Fed. R. Civ. P. 56(e)(1).

Waldron avers that he worked with the plaintiff to prepare his release plan and that the plaintiff told Waldron that he would not cooperate with the terms and conditions of his supervision upon his release from GBCI. Waldron also states that the plaintiff repeatedly refused to meet with Waldron to discuss the rules of supervision. In contrast, the plaintiff swore in his complaint that he had never received any extended supervision rules to sign. The plaintiff also states that he

questioned Waldron a week before his October 14, 2008 mandatory release date about not receiving his parole rules. According to the plaintiff, Waldron told plaintiff that his parole agent would give him his rules at his office.

Siarnicki called Waldron on October 2, 2008, to discuss the plaintiff's situation. They decided that a representative from the Division of Community Corrections would pick the plaintiff up from GBCI on his mandatory release date.

On October 6, 2008, Siarnicki consulted with his supervisor, defendant Beverly Dillon. Dillon instructed Siarnicki to speak with the plaintiff to determine if he was, in fact, going to refuse to cooperate and abide by his rules of supervision. If he refused, Siarnicki was told to place the plaintiff on a hold at MSDF because of his refusal to accept his rules of supervision. They determined that the plaintiff would remain on a hold pending an investigation of his refusal to accept and abide by his rules of supervision. Then, after the investigation, they would decide whether to offer the plaintiff an alternative to revocation or to proceed with revocation of his supervision.

On October 14, 2008, defendant Siarnicki and Debra Fritz went to GBCI to pick up the plaintiff and take him to MSDF. Siarnicki placed restraints on the plaintiff for transport, and Fritz placed the plaintiff's property into several boxes for the trip. According to the plaintiff, he asked why he was being restrained and why he was not allowed to travel home on his own. Before they left GBCI, Siarnicki asked the plaintiff whether he would cooperate with the rules of supervision, and the plaintiff

told Siarnicki, "I am not going on the bracelet." (Siarnicki Aff., ¶14). Then Siarnicki and Fritz took the plaintiff to MSDF to be placed on a hold.

When they arrived at MSDF, the plaintiff told Siarnicki, "you can't make me do EMP or Transitional Living," or words to that effect. (Siarnicki Aff., ¶15). The plaintiff avers that after ten minutes of intense argument at MSDF between the plaintiff and Siarnicki, MSDF staff stepped in and instructed Siarnicki to calm down. The plaintiff avers that Siarnicki told MSDF staff that he and Fritz brought plaintiff in from their office because plaintiff was acting disorderly after he showed up for a scheduled appointment. The plaintiff immediately objected to this statement and attempted to explain to MSDF staff that he had arrived directly from GBCI and that it was his mandatory release date. According to plaintiff, Siarnicki became extremely angry and screamed:

- that's the problem with blacks, they think they know every damn thing!

- I got your statement of information claim asshole, how dare you attempt to file a [sic] injunction in court against me?!

- I'm sending your ass back to prison!

- You're not getting out period!

(Compl. at 5). Siarnicki denies saying any of those things to the plaintiff.

Siarnicki references a written statement he received on October 17, 2008, that the plaintiff made to a MSDF officer. However, the statement is not attached to Siarnicki's affidavit so its contents are not admissible. *See* Fed.R.Civ.P. 56(e)(1).

On October 20, 2008, Siarnicki met with the plaintiff. At that time, the plaintiff admitted that he had been disruptive with the MSDF captain in the intake area. However, he continued to deny that he had rejected any of his rules of supervision or that he had threatened either Siarnicki or Fritz.

Siarnicki discussed the plaintiff's case with Supervisor Beverly Dillon on October 22, 2008. After discussing the entire situation, including the plaintiff's refusal to abide by his rules of supervision and his threats to Siarnicki and Fritz, Dillon approved the plaintiff's case for revocation. The plaintiff remained in custody pending the outcome of his revocation proceedings.

The plaintiff had a hearing before an administrative law judge (ALJ) on December 11, 2008, after which his supervision was revoked. The ALJ found that the plaintiff refused to cooperate with EMP and TLP, that he had been disruptive at MSDF, and that he had threatened both Siarnicki and Fritz. The revocation was sustained on appeal.

In order to view the evidence in the light most favorable to the plaintiff, the court will accept as true that the plaintiff never received a copy of his rules of supervision and that he never expressly told Siarnicki on the day of his mandatory release that he would not comply with the rules of his supervision. Nevertheless, Siarnicki had received written notice from the plaintiff twice that he was unwilling to comply with electronic monitoring or transitional living.

**DISCUSSION**

The defendants argue that they are entitled to summary judgment because there was no violation of the plaintiff's constitutional rights when he was placed into custody on his mandatory release date. They submit that offenders may be placed into custody immediately when they manage to violate their rules of supervision before or simultaneously with their release dates. The defendants also argue that they are entitled to qualified immunity for their actions. Finally, defendant John Husz argues that he had no personal involvement in the events underlying the plaintiff's claims.

In response, the plaintiff contends that the DOC had no authority to detain the plaintiff past his mandatory release date and that he was not subject to revocation because he was a prisoner at the time of the alleged violations. The plaintiff also asserts that the defendants' affidavits are false and that he never refused anything and never received copies of any rules of supervision.

**I.      JOHN HUSZ**

Section 1983 does not allow actions against persons merely because of their supervisory roles.  *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Palmer v. Marion County*, 327 F.3d 594 (7th Cir. 2003).  Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting

*Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Defendant John Husz has presented admissible evidence, in the form of his affidavit, that he did not participate in the decision to place and retain the plaintiff in custody, and that he was not aware of when or why the plaintiff was placed in custody at MSDF on October 14, 2008, until he was named as a defendant in this case. The plaintiff's general statement that Husz "was given full knowledge of my situation and illegal detention, because he had recently freed another inmate in my identical situation, but Warden John Husz refused to help me" is insufficient to cast doubt on Husz's affidavit made on his personal knowledge, even when viewing facts in the light most favorable to the plaintiff. Thus, there is no evidence in the record to suggest that Husz knew about, facilitated, approved, condoned, or turned a blind eye to conduct that violated the plaintiff's constitutional rights. The plaintiff has failed to "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e), and the court will grant summary judgment in favor of defendant Husz.

## II.  QUALIFIED IMMUNITY

The defendants argue that they are entitled to qualified immunity on the plaintiff's claims. The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2)

whether the constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court recently revisited *Saucier* and held that "because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decision [that] will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 821 (2009).

Qualified immunity is an affirmative defense. Once raised, a plaintiff must demonstrate that the constitutional right was clearly established by showing that there is "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights. *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). In this case, the court will exercise the option provided by *Pearson* and consider first whether the constitutional right the plaintiff asserts was violated was clearly established at the time of the alleged violation.

The court can grant the defendants' motion for summary judgment if it finds that the right the defendants allegedly violated was not clearly established at the time of the purported misconduct. *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009). To remove the shield of qualified immunity from the defendants, the right that they "allegedly violated must be clearly established in a particularized sense." *Id.*

(omitting internal quotations). The court must determine whether, operating under the state of the law as it existed at the time of the relevant events, "a reasonable officer would have known that the particular action at issue ... was unlawful." *Id.* at 479 (quoting *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992)).

A state prisoner in Wisconsin is "entitled to mandatory release on parole" upon serving two-thirds of his sentence. Wis. Stat. § 302.11; *see Felce v. Fiedler*, 974 F.2d. 1484, 1491-92 (7th Cir. 1992) (Wisconsin's mandatory release statute creates a protectible liberty interest). Prisoners who reach their mandatory release date (full sentence less good time) are released on parole until expiration of the full term. However, the statute establishing mandatory release describes that inmates paroled on their mandatory release date are "subject to all the conditions and rules of parole ...." Wis. Stat. § 302.11(6).

Wisconsin Administrative Code DOC 328 governs the DOC's supervision of inmates paroled after their mandatory release date and gives the DOC and its agents "substantial discretionary authority to develop rules and conditions of parole." *Macemon v. McReyolds*, 208 Wis.2d 594, 597, 561 N.W.2d 779 (Wis. Ct. App. 1997) (*Macemon I*). States may properly subject parolees to many restrictions not applicable to other citizens. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In *Macemon I*, 208 Wis.3d at 598, the Wisconsin Court of Appeals determined that the DOC has the authority to require a mandatory release parolee to submit to electronic monitoring.

In *Riesch v. Schwarz*, 2005 WI 11, ¶ 30, 278 Wis.2d 24, 692 N.W.2d 219, the Wisconsin Supreme Court approved the immediate detention and revocation of a parolee on his mandatory release date because he stated he would not reside at the approved halfway house where his parole agent had placed him. The court found that the DOC "was not required to wait until Mr. Riesch committed a crime before it took steps to protect the public." *Id.* at ¶ 25. The plaintiff maintains that *Riesch* does not apply to this case because Riesch was a sex offender and was subject to presumptive mandatory release rather than regular mandatory release. The Wisconsin Supreme Court does not rely on that distinction. The court mentions only in passing that the reasons underlying the DOC's authority to act prior to release were "particularly true since Mr. Riesch was a sex offender who was totally rejecting active supervision." *Id.*

In *Riesch*, the court rejected the notion that custody and parole are mutually exclusive and used a parole hold as a classic example of the overlap between them. *Id.* at ¶18. It affirmed that a release can take place even when the DOC maintains continuous custody. *Id.* at ¶ 30. The person's status changes from a prisoner serving a sentence to a parolee detained on a parole hold. *Id.*

The plaintiff cites and relies on the same two cases Riesch did, *Morgan v. Wood*, 224 Wis.2d 534, N.W.2d 922 (Wis. Ct. App. 1999), and *Olson v. Litscher*, 2000 WI App 61, 233 Wis. 2d 685, 608 N.W.2d 425. However, the Wisconsin Supreme Court in *Riesch* distinguished *Morgan* and *Olson* because they were cases

in which the inmates did nothing to warrant their continued detention at the time of their mandatory release date. *Riesch*, ¶ 21. Instead, the court relied on the *Macemon* cases where the inmate "violated the conditions of his parole immediately and simultaneously with his mandatory release date. Accordingly, a parole hold was placed on him and he was revoked, despite the fact that he was kept in continuous custody." *Id.*; *see Macemon I*, 208 Wis.2d at 597; *see also Macemon v. Christie*, 216 Wis.2d 337, 576 N.W.2d 84 (Wis. Ct. App. 1998) (*Macemon II*). The court found that Riesch had stubbornly refused to cooperate with the department's efforts to implement a suitable supervision plan. *Riesch,* ¶ 25. Based on his often stated objections to the parole planning process, the court was satisfied that Riesch "knew full well why he had been taken to jail rather than simply being released to the community. The department was not required to wait until Mr. Riesch committed a crime before it took steps to protect the public. ... That stubborn contempt for the parole supervision process could not be ignored and required active intervention to protect the public from the risk that Mr. Riesch might commit serious crimes if he were simply released to the community under his own terms. His behavior left the department no real choice other than revocation of parole and further confinement." *Id.*

Although the DOC is not free to hold inmates indefinitely for such problems as failure to find suitable housing on its part, the DOC has substantial discretionary authority to develop the rules and conditions for release. "Where inmates violate

these terms immediately and simultaneously with their scheduled mandatory release dates, the DOC should be able to maintain continuous custody, even though that person's status changes from a prisoner serving a sentence to a parolee detained on a parole hold." *Id.* at ¶30.

Thus, in October 2008, a reasonable officer would have known that he could immediately detain a parolee on their mandatory release date for their stated intention not to comply with their rules of supervision. It was clearly established in *Riesch*, a 2005 case, that they could do so. The defendants in this case are entitled to qualified immunity, and the court will grant summary judgment in their favor.

In his complaint, in addition to monetary damages, the plaintiff sought "immediate termination of all defendants! for malicious abuse of authority, negligence of Wisconsin state mandated law and total disregard of the United State Constitution ...."[2] (Complaint at 9). While qualified immunity only shields the defendants from monetary damages, the court does not have the jurisdiction to grant the injunctive relief requested by the plaintiff, the termination of the defendants. Additionally, the rejection of this requested relief was implicit when the court allowed

---

[2] The plaintiff has filed a motion to amend (to add on to or replace) the requested relief portion of civil suit case # 08-V-01068-JPS, which was docketed on September 3, 2010. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the decision on whether to allow the amendment is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court will not allow an amendment at this point in the litigation, where the defendants' motion for summary judgment is fully briefed and was awaiting a decision. Moreover, the plaintiff's motion does not comply with Civil Local Rule 15 (E.D. Wis). Finally, the amended relief requested seeks various monetary damages and the termination of the employment of all the defendants, which is generally the same relief requested in the plaintiff's complaint. The plaintiff's motion will be denied.

the plaintiff to proceed on § 1983 claims against the defendants in their individual capacities. His complaint did not state any policy claims or claims against the defendants in their official capacities, which are essentially claims against the State of Wisconsin.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #25) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to amend the requested relief (Docket #46) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of September, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge